IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

RECEIVED
JAN 2 4 2017
CLERK, U.S. DIST. COURT
WESTERN DIST. OF TENN

| | |
|---|---|
| BELINDA F. KERUSCH, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. _____ |
| ) | |
| FORDHARRISON LLP and ) | JURY DEMANDED |
| LOUIS P. BRITT III, in his capacity as ) | |
| Office Managing Partner of ) | |
| FordHarrison LLP - Memphis, ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

COMES NOW Plaintiff Belinda F. Kerusch and brings this action against Defendants FordHarrison LLP ("FH") and Louis P. Britt III ("Mr. Britt"), in his capacity as Office Managing Partner of FordHarrison LLP – Memphis ("FH-M"), for racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §1981, and for age discrimination in violation of The Age Discrimination in Employment Act (ADEA) of 1967.

### I. PARTIES

1. Plaintiff Belinda F. Kerusch ("Ms. Kerusch" or "Plaintiff") is an African-American female resident of Shelby County, Tennessee, who was 59 years old at the time of termination on August 7, 2015. Ms. Kerusch was hired as a Legal Assistant.

2. Defendant FH is a large labor and employment law firm with over 200 lawyers in 29 offices across the country. FH-M is located at 1715 Aaron Brenner Drive, Suite 200, Memphis, TN 38119. Registered Agent for FH-M, according to Tennessee Secretary of State, is Corporate Creations Network, Inc., 205 Powell Place, Brentwood, TN 37027.

3. Mr. Britt (Caucasian) is the Office Managing Partner of FH-M and has been in this position for more than five years. He has the final word on major decisions in the Memphis Office, among which include hiring and firing. Mr. Britt is an equity partner of FH.

## II. JURISDICTION AND VENUE

4. The Court has jurisdiction over Plaintiff's claims brought under 42 U.S.C. §§ 1981 and 1983 and 28 U.S.C. §§ 1331 and 1343(a)(4). Venue is proper under 28 U.S.C. § 1391.

## III. FACTS

5. Plaintiff worked for FH-M from November 17, 2004, to August 7, 2015, as a Legal Assistant. During Plaintiff's course of employment, she worked for several attorneys (partners and associates) as their primary legal assistant, back-up assistant for other attorneys and a consultant, in the absence of coworkers (sick leave, vacation, etc.), and was assigned part-time receptionist's duties and other file opening/closing duties when FH-M reduced its workforce and eliminated the receptionist's and copy center/file clerk positions.

6. Plaintiff was qualified for her job with Defendant and performed her duties in a very competent and satisfactory manner. Plaintiff was often complimented for a job well done, given gifts of appreciation by the attorneys she supported, complimented by clients, and exhibited an exemplary telephone presence.

7. Defendant FH's business is to defend companies against EEOC Charges and employment-related lawsuits, and educate clients in preventive steps to avoid EEOC Charges and lawsuits, among other things.

8. Defendant FH-M presented seminars to clients regarding "Discipline and Documentation," which emphasized the importance of documenting disciplinary actions.

9. Plaintiff did not have any disciplinary write-ups or warnings in her personnel file for job performance.

10. Defendant FH, according to its website, has a "Commitment to Diversity" to "Create a Better Workplace – Foster a culture and work environment that focuses on developing a tailored plan for internal and external mentoring and opportunities for cross cultural dialogue to eliminate subtle bias and stereotyping and to open minds to alternative solutions. Create an Engaged and Active Workforce – Develop and implement a plan for utilizing the firm's "assets" – its members - to create a culture of inclusion through innovation, collaboration and risk taking for change.

11. Contrary to FH's "Commitment to Diversity," Mr. Britt exhibited subtle bias by ignoring and/or dismissing any suggestions for change from African-American employees, while welcoming suggestions from Caucasian employees.

12. Of FH's 200 plus attorneys, less than two percent (2%) are African-American and only three has achieved the level of partner.

13. FH-M's personnel has been predominately Caucasian, with a revolving door of African-Americans, during Plaintiff's 10-year, 9-month employment with FH-M. Of the office staff, there has been only three other African-Americans in the office during Plaintiff's 10-year, 9-month employment.

14. With the reduction in force of the copy center/file clerk, a paralegal, and the receptionist, legal assistants had to assume many additional duties: Several hours working the receptionist's desk (which meant no access to the physical files at their desks, no access to the copier or scanner), and running conflicts checks, opening and closing files, etc.

4306821v.1

15. The brunt of the office staff's workload was on the African-American employees. The days were 9:00 a.m. (or 8:30 a.m.) to 1:00 p.m. (or 12:30 p.m.) every other day at the receptionist's desk, after which there was a one-hour lunch, and backup receptionist duties every other day to fill in for breaks, lunch, and to allow coworker to go to her desk to get a document or work to meet a rush deadline.

16. Of a 37.5-hour workweek, approximately 27.5 hours were spent at the front desk, with limited access to items essential to perform legal assistant duties (files, copier, scanner, etc.); 5 hours for lunch, leaving 5 hours a week to have access to items to do work that could not be done at the front desk, which was a good portion of the work.

17. In the wake of and following the reduction in force, in addition to the receptionist's duties, new duties were assigned to the legal assistants without any formal procedures or guidelines as to how the duties were to be performed.

18. Mr. Britt was very dismissive when presented with suggestions from African-American employees to handle the workload more efficiently and would not even consider a dialogue in that regard.

19. Mr. Britt was receptive to concerns from Caucasian employees.

20. Around mid-year 2015, Plaintiff overheard Mr. Britt comment, in reference to Ms. Duncan and Plaintiff, "If they don't want to work, I will FIRE THEIR ASS[sic] and hire someone off the street!" A similar comment was made by Mr. Britt's former assistant Pam Mosley (Caucasian).

21. Both Ms. Duncan and Plaintiff were hard workers. "If they don't WANT to work . . ." is a race-based stereotypical comment, that "Blacks are lazy."

22. Plaintiff mentioned Mr. Britt's comment to one of the partners she supported, Kathryn Pascover ("Ms. Pascover")(Caucasian). Ms. Pascover responded, "The Firm invested ten years in you and I don't think that firing you is going to happen."

23. Around mid-year 2015, Jonnie Huckelberry ("Ms. Huckelberry")(Caucasian), Office Contact, met with Ms. Duncan and Plaintiff, separately, and stated, "If you are not happy, then we prefer you go somewhere else . . ." Ms. Huckelberry did not have this conversation with the other legal assistant, Joy Cranford ("Ms. Cranford") (Caucasian).

24. Mr. Britt and Ms. Huckelberry were well aware of the backlog in filing, opening and closing files, etc., because Plaintiff called it to their attention numerous times - even offering to volunteer her own time to assist and FH-M legal assistants were substantially behind on filing, opening and closing files, etc.

25. Mr. Britt expressed a deep admiration for Jennifer Stone ("Ms. Stone")(Caucasian, approximately 35 years old), his paralegal, on a regular basis. He often made a point of telling Ms. Stone how "pretty" she looked and what an "excellent" job she was doing.

26. The backlog only became important to Mr. Britt when Ms. Stone became upset that she could not access documents and complained to Mr. Britt.

27. On Wednesday, August 5, 2015, Ms. Stone came to Plaintiff with a barrage of requests for discovery. When Plaintiff's response to Ms. Stone was not post haste due to the volume of her requests, Ms. Stone went into Mr. Britt's office to complain regarding documents she believed to be incorrectly filed in DMS by Plaintiff.

28. On Thursday and Friday morning (August 6 and 7, 2015) Mr. Britt had closed door meetings with the two partners whom Plaintiff supported, Ms. Pascover and Robbyn Hutton ("Ms. Hutton")(Caucasian).

29. Plaintiff was treated differently than Ms. Stone because of her race, age, and physical characteristics, and in violation of her Civil Rights.

30. Plaintiff was terminated on August 7, 2015. The reason stated on the Separation Notice was "Unable to meet the firm's needs."

31. Ms. Huckelberry presented Plaintiff with a Separation Notice, but did not answer any questions, nor did she explain the vague term, "Unable to meet the firm's needs."

32. Plaintiff received her Notice of Right to Sue on October 26, 2016. Filing of the Complaint is timely, within 90 days from receipt of Notice of Right to Sue.

33. On the day of Plaintiff's termination, FH-M changed the process in which legal assistants would have to go the receptionist's desk and they could now perform receptionist's duties at their desk.

34. A Caucasian female, younger than 40 years old was hired to replace Plaintiff.

## IV. CAUSES OF ACTION

35. Plaintiff incorporates the foregoing paragraphs above as though specifically set forth herein, and alleges that:

36. Defendants actions constitute unlawful racial discrimination in violation of 42 U.S.C. §1981;

37. Defendant's actions constitute unlawful age discrimination in violation of The Age Discrimination in Employment Act (ADEA) of 1967;

38. As a direct and proximate result of Defendant's unlawful discriminatory and retaliatory conduct toward Plaintiff, Plaintiff has suffered lost wages and benefits and has sustained other pecuniary losses. Plaintiff, as a result of Defendant's actions has suffered damage to her professional and personal reputation. Defendant's actions have been demeaning

to Plaintiff and have caused her to suffer pain, humiliation, embarrassment, and emotional distress; and

39. Defendant's unlawful actions complained of above were intentional, malicious, and taken in reckless disregard of the statutory and common law rights of Plaintiff.

## V. **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that the following relief be granted following a jury verdict in her favor:

1. Back pay, lost benefits, and other pecuniary losses proximately caused by Defendant's unlawful conduct;

2. Front pay and the value of future lost benefits because reinstatement is not feasible;

3. Compensatory damages against Defendant in an amount to be determined by the jury;

4. Punitive damages against Defendant in an amount to be determined by the jury;

5. All costs, disbursements, pre-judgment interest, post-judgment interest, and expert witness fees allowed under actions brought pursuant to 42 U.S.C. Section 1981 and

6. Such further relief as is deemed just and proper.

Respectfully submitted January 24, 2017,

_Belinda F. Kerusch_
BELINDA F. KERUSCH
2160 Brown Avenue
Memphis, TN 38108
Cell Phone: 901.734.1355
bkerusch@comcast.net

*Pro Se* Plaintiff